UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TED D. PATTERSON,

       Plaintiff,

       v.

MATTHEW SIVLEY, JEFFREY T.
BOWMAN, Chief of Gearhart Police
Department; and CITY OF GEARHART,

       Defendants.

Civil No. 04-1223-HA

OPINION AND ORDER

Thane W. Tienson
Landye Bennett Blumstein, LLP
3500 Wells Fargo Center
1300 S.W. Fifth Avenue
Suite 3500
Portland, Oregon 97201
    Attorney for Plaintiff

Gerald L. Warren, Attorney at Law
280 Liberty Street S.E.
Suite 206
Salem, Oregon 97301
    Attorney for Defendants

HAGGERTY, Chief Judge:

1 - OPINION AND ORDER

Defendants move for summary judgment and to strike plaintiff's affidavits and declarations. Oral argument regarding these motions was deemed unnecessary. For the following reasons defendants' Motion for Summary Judgment (Doc. # 11) is granted and defendants' Motion to Strike (doc. 25) is denied as moot.

**BACKGROUND**

This case is brought by plaintiff Ted D. Patterson (plaintiff), who was arrested by defendant Matthew Sivley, a City of Gearhart Police Officer, on June 3, 2004, for violating ORS 813.010, driving under the influence of intoxicants (DUII). Although the parties dispute the proper interpretation of the circumstances surrounding this arrest, the relevant factual background is largely unchallenged.

Shortly after 5 p.m. on June 3, 2004, plaintiff received a telephone call from his employee, Eduardo Cruz Lopez, advising plaintiff that the Gearhart Police Department had impounded plaintiff's company vehicle because a traffic stop of that vehicle led to the discovery that Lopez was driving with a suspended license. Plaintiff received the call from Lopez while drinking beer at the Iredale Inn.

Plaintiff then drove to pick up Lopez and the rest of his crew in front of the Gearhart Building Supply. Lopez told him that the company vehicle had been towed. Plaintiff proceeded to the Gearhart City Hall (also the Police Station) to retrieve his company vehicle. In sworn deposition testimony, plaintiff acknowledges the following facts:

1. He parked his vehicle in front of City Hall at an angle that crossed over designated parking lines; Warren Declar., Ex. 1 (January 20, 2005 Deposition of Ted D. Patterson, hereinafter "Ex. 1") at 14;

2 - OPINION AND ORDER

2. Plaintiff "always" has red, bloodshot, watery eyes after he works, Ex. 1 at 32, and plaintiff worked until 4:30 p.m. on the afternoon of his arrest in Seaside, Oregon; Ex. 1 at 8;

3. When walking plaintiff tends to favor his right ankle because of a past injury, and sometimes people will comment about plaintiff's gait – especially people who are unfamiliar with plaintiff; Ex. 1 at 5-6; and

4. Plaintiff consumed alcohol on the afternoon in question, Ex. 1 at 10, but lied to defendant Sivley when the officer questioned him about this in the Police Station, and plaintiff knew that Sivley could detect the odor of beer in his presence; Ex. 1 at 16.

The court accept these representations made by plaintiff in his deposition. There are no material disputes about these facts.

Defendant Sivley observed plaintiff arrive at City Hall. The officer watched plaintiff park his van in an "askew" manner, and then approach the building with an unusual "side-to-side sway." Declaration of Gearhart Police Officer Matthew Sivley (hereinafter Sivley Declar.) at 2. After entering the station, Sivley saw that plaintiff's eyes were red, bloodshot and watery, and Sivley detected the odor of alcoholic beverages. *Id*.

There is also no dispute that when plaintiff encountered Sivley, plaintiff inquired about recovering his company vehicle, and Sivley refused to release the vehicle to plaintiff because he believed plaintiff was intoxicated. Plaintiff testified in his deposition that during this encounter he was sarcastic to Sivley, lied to him, and tried to convey that he would be uncooperative with the officer because plaintiff lacked respect for him. Ex. 1 at 16-17.

When plaintiff announced that he would proceed to the tow company lot to retrieve his company vehicle and walked out of City Hall, Sivley followed plaintiff outside and advised him that plaintiff could not drive while impaired. Sivley then requested plaintiff to undergo field sobriety tests, and when plaintiff refused, saying, "No, I am leaving," Sivley arrested plaintiff for DUII.

After plaintiff's arrest, he was detained in the back of a police vehicle briefly, and then agreed subsequently to take part in sobriety tests and, later, to provide breath samples into an "Intoxilyzer 5000" breathalizer machine. Sivley observed some signs of possible impairment during the field sobriety testing. Sivley Declar. at 3. He transported plaintiff to the Seaside Police Department and administered the breath tests. Two attempts to analyze plaintiff's breaths resulted in readings of .00 (zero). Ex. 1 to Sivley Declar. at 7. Sivley believed plaintiff was manipulating the test results by participating in the testing improperly. *Id*. Sivley recorded that plaintiff refused the breathalyzer test, and issued citations to plaintiff for DUII and for refusing the test.

Plaintiff was released from custody later that evening. A friend drove him to a nearby hospital, where he paid to have an alcohol blood test administered. According to plaintiff, the results indicated alcohol blood levels "too small to be detected." Ex. 1 at 36.

A few days later, as part of a longstanding routine procedure, co-defendant Jeffrey T. Bowman, Chief of Police for Gearhart, transmitted logs of daily Police Department activities to the Daily Astorian, a newspaper. In the June 7, 2004, edition of the newspaper, the following summary of plaintiff's arrest was published:

> Ted D. Patterson, 59, of 110 Northwest Fourth Street No. D16 in
> Warrenton, was arrested at 5:38 p.m. Thursday at Gearhart City
> Hall by Gearhart Police on a charge of DUII.

Affidavit of Thane W. Tienson in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Exhibit C at 2.

Plaintiff acknowledges that there is nothing in that published article that is inaccurate. Ex. 1 at 34.

In his Complaint, plaintiff brings four claims. These claims are for: damages arising from alleged violations of plaintiff's constitutional rights, brought pursuant to 42 U.S.C. § 1983; false imprisonment; defamation; and negligence.

Defendants move for summary judgment dismissing these claims. For the following reasons, this motion is granted.

**STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a

5 - OPINION AND ORDER

"party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id*. At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id., see also Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

A public official is liable under 42 U.S.C. § 1983 only if that official causes the plaintiff to be subjected to a deprivation of constitutional rights. A warrantless arrest of a

person is permissible if the arresting officer has probable cause to believe that a crime has been committed, and that the subject of the arrest has committed the crime. *Gerstein v. Pugh*, 420 U.S. 103 (1975). Probable cause is described as "facts and circumstances within the officer's knowledge . . . sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994).

The relevant inquiry arising from arrest-related claims under 42 U.S.C. § 1983 is not whether the detention was wrongful, but whether the detention was unconstitutional. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). The United States Supreme Court recognized that "the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Id*. The Court explained that "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Id*.

**ANALYSIS**

Perhaps understandably, plaintiff's indignation about his arrest arises from the existence of evidence that supports plaintiff's belief that he was not impaired when defendant Sivley arrested him. This evidence includes blood alcohol testing plaintiff himself obtained after his release, his breathalizer test results, and plaintiff's subjective recollection of his performance during Sivley's field sobriety tests.

Plaintiff's belief in the wrongfulness of his arrest (but not the evidence of it) may also be bolstered by the fact that the proposed suspension of plaintiff's driving privileges was later

rejected by the Office of Administrative Hearings for the Oregon Department of Transportation, on grounds that the Department failed to establish all of the requirements necessary for a valid suspension. Ex. 4 to Warren Declar.

Moreover, plaintiff acknowledges that during his arrest he was sarcastic toward defendant Sivley and that he acted uncooperatively toward the officer because he did not respect him. Presumably, as a result, tension arose between these men that could give rise to a suspicion, founded or unfounded, that Sivley might treat plaintiff unfairly (although, it must be stated, the undisputed evidence of record establishes that any possible animosity between the men would have stemmed directly from plaintiff's attitude toward Sivley).

Nevertheless, as noted above, there are no guarantees protected by the Constitution that only the guilty will be arrested. *Baker*, 443 U.S. at 142. In fact, whether plaintiff was intoxicated at the time of his arrest is not dispositive of this action and need not be litigated. Instead, in deciding defendants' motion for summary judgment, what must be resolved first is whether there was a "fair and reliable determination of probable cause" prior to plaintiff's "significant pretrial restraint of liberty." *Id*. This court concludes that as a matter of law there was.

Plaintiff acknowledged in sworn deposition testimony that he had worked a full day prior to his arrest, which would have rendered his eyes bloodshot, red and watery at the time he encountered Sivley. Plaintiff acknowledged that he walks with an unusual gait that is noticeable to people who are unfamiliar with him (such as Sivley). Plaintiff acknowledged that upon arriving at City Hall (and in sight of Sivley) he chose to park his vehicle over parking lines rather than taking extra time to align his vehicle properly within the lines, and

that he had been consuming alcoholic beverages, knew that Sivley could detect the odor of those beverages, but nevertheless lied to Sivley when the officer inquired about his possible drinking.

These undisputed facts fairly and reliably (and plainly) establish that Sivley had probable cause to arrest plaintiff for suspected DUII. Plaintiff's contentions to the contrary either lack merit, or pertain to evidence that could be interpreted as supporting plaintiff's belief that he was not intoxicated at the time of his arrest. Plaintiff's possible innocence of the crime for which he was charged fails to diminish in any way the fact that Sivley had probable cause to make that charge and arrest plaintiff.

Plaintiff's claims each require, either directly or indirectly, a finding that the officer arresting him lacked probable cause to do so. What follows is a claim-by-claim analysis of how Sivley's probable cause to arrest plaintiff impacts each of plaintiff's claims.

Plaintiff's Section 1983 claim alleging violations of his constitutional rights to be free from unreasonable searches and seizure under the Fourth and Fourteenth Amendments of the United States Constitution, and to due process under the Fifth and Fourteenth Amendments, is wholly dependent upon a finding that his arrest was improper. An arrest is considered a reasonable seizure when it is supported by probable cause. *Hayes v. Florida*, 470 U.S. 811, 816 (1985). Any due process claims brought by plaintiff that fall outside the context of alleging an illegal or improper arrest fail as a matter of law because there is no evidence that plaintiff was deprived of due process pertaining to the impoundment of his vehicle (or that he even challenged the validity of that impoundment). Alternatively, no due process violation can arise from an alleged injury to plaintiff's reputation. *See Wenger v. Monroe*, 282 F.3d

1068, 1074 (9th Cir. 2002) (reputation is neither a liberty or property that enjoys guarantees against state deprivation without due process of law).

Similarly, because his arrest survives constitutional scrutiny, then plaintiff's claims against the City of Gearhart pertaining to defendant Sivley's training and supervision are rendered moot. Such claims of municipal liability, brought under the teachings of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), are impossible in cases in which the individual municipal defendants have acted constitutionally. *Palmerin v. City of Riverside*, 794 F.2d 1409, 1414-15 (9th Cir. 1986) (absent any constitutional violations by the individual defendants, there can be no *Monell* liability) (citations omitted).

The same is true regarding plaintiff's state law claims for false imprisonment, defamation, and negligence. The tort of false imprisonment has four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Hiber v. Creditors Collection Serv. of Lincoln Co., Inc.*, 961 P.2d 898, 901 (Or. App. 1998) (citing *Lukas v. J.C. Penney Co.*, 378 P.2d 717 (Or. 1963)); *Walker v. City of Portland*, 693 P.2d 1349 (Or. App. 1985)). Because plaintiff's arrest was supported by probable cause, his confinement cannot be considered unlawful, and the fourth element of the tort is not met.

Plaintiff's defamation claim also fails because his arrest was supported by probable cause. The arrest was proper, and its occurrence must be viewed as true. "Truth is an affirmative defense to a defamation claim." *Lansford v. Georgetown Manor, Inc.*, 84 P.3d 1105, 1111 (Or. App. 2004) (citing *Bank of Oregon v. Independent News, Inc.*, 693 P.2d 35

(Or. 1985)).  Plaintiff himself acknowledges that nothing in the publication about his arrest is inaccurate.  Therefore, plaintiff's defamation claim must necessarily fail.

Finally, even assuming (without deciding) that plaintiff can assert a valid claim of negligence pertaining to his arrest, such a claim must fail if defendant Sivley acted reasonably (e.g., with probable cause) when he arrested plaintiff.  "[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326, 1336 (Or. 1987).

In light of the reasoning provided above, the existence of this probable cause compels an order of summary judgment in favor of defendants on each of plaintiff's claims.  Moreover, defendants Sivley and Bowman are both entitled to qualified immunity from plaintiff's claims, as well.

Police officers are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. Co. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity doctrine allows for errors in judgment, and protects "all but the plainly incompetent or those who knowingly violate the

law . . . .  [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475

11 - OPINION AND ORDER

U.S. 335, 341 (1986); *see also Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) ("Th[e] test allows ample room for reasonable error on the part of the [government official]").

"A court must determine whether, in the light of clearly established principles governing the conduct in question, the officer objectively could have believed that his [or her] conduct was lawful." *Watkins v. City of Oakland,* 145 F.3d 1087, 1092 (9th Cir. 1998). Qualified immunity is a legal issue to be decided by the court and at the earliest possible time in the litigation. *Act Up/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).

When an officer asserts qualified immunity at the summary judgment stage, the court must consider "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, then "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

If the facts alleged reveal a constitutional violation, then "the next, sequential step is to ask whether the right was clearly established." *Id*. A constitutional right is clearly established when it would be clear to a reasonable officer that the officer's conduct was unlawful in the situation confronted. *Id*. at 201-02.

The Supreme Court's decision in *Saucier* instructed lower courts to "concentrate at the outset on the definition of the constitutional right" and "determine whether, on the facts alleged, a constitutional violation could be found . . . ." *Saucier*, 533 U.S. at 207. The Court rejected the practice of treating an inquiry into whether officers are entitled to qualified

immunity for the use of allegedly excessive force the same as an inquiry regarding the *merits* of an excessive force claim, because an officer might be reasonably mistaken as to the facts justifying his or her actions, or as to the law governing the officer's actions, and so could use objectively excessive force without clearly violating the Constitution. *Saucier*, 533 U.S. at 205-206; *Billington*, 292 F.3d at 1184.

Any genuine issues of material fact concerning the underlying facts of what the officer knew or what the officer did are questions of fact for the jury. *Acosta v. City and Co. of San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996), citing *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). However, where the essential facts are undisputed, the reasonableness of the officer's actions is properly determined by the court. *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099.

In this case, the essential facts are undisputed. Not only is there no constitutional violation presented, but this court concludes as a matter of law that both Sivley and Bowman acted reasonably in every aspect of the events put at issue here.

**CONCLUSION**

All of plaintiff's claims and arguments have been considered. Finding no genuine issue of material fact disputing that the defendants, individually and collectively, acted reasonably, legally and properly within the parameters of the United States Constitution in regards to the arrest of plaintiff Ted D. Patterson and the subsequent publication of truthful daily activities of the Gearhart Police Department, this court is compelled to grant defendants' Motion for Summary Judgment (Doc. # 11) as to each of plaintiff's claims. Because defendants are entitled to complete summary judgment regardless of this court's consideration of submissions

made by plaintiff Ted D. Patterson that are challenged by defendants' Motion to Strike (Doc. # 25), that motion is denied as moot. Any other pending motions are denied as moot. The court will issue the appropriate Judgment in this matter.

IT IS SO ORDERED.

Dated this  27   day of September, 2005.

                                                          /s/ Ancer L.Haggerty
                                                            Ancer L. Haggerty
                                                      United States District Judge